# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANCIS RUDI AND MARGARET RUDI | |
| Plaintiffs, | |
| v. | |
| STATE FARM FIRE & CASUALTY CO. | 2:11-cv-04362-WY |
| Defendant. | |

## MEMORANDUM

YOHN, J.                                                                                                                    November 27, 2013

Plaintiffs Francis and Margaret Rudi bring this action against State Farm Fire & Casualty Company ("State Farm") related to State Farm's payment of their insurance claims. State Farm now moves for summary judgment. For the following reasons, the motion for summary judgment will be granted.

**I.      Background**

      **A.      Factual and Procedural History**

The plaintiffs are owners and residents of property located at 151 Cassel Road, Harleysville, Pennsylvania ("Property"). (Compl. ¶ 1). On September 30, 2010, a stream near the Property flooded, damaging the dwelling thereon and contents within. (Mot. ¶ 5, Resp. ¶ 5). At the time, the Property was covered for flood insurance under State Farm Flood Dwelling Policy No. 38-RB-4764-6 FL ("Policy"), effective from August 29, 2010 to August 29, 2011. (Mot. ¶ 4, Resp. ¶ 4). The Policy provided $76,000 in dwelling coverage (minus a $2,000 deductible); and

1

$38,800 in personal property coverage (minus a $2,000 deductible). (*Id.*). The Policy was a federally underwritten, Standard Flood Insurance Policy ("SFIP") administered by State Farm pursuant to the National Flood Insurance Program ("NFIP"). (Mot. ¶ 4, 16; Resp. ¶ 4, 16).[1] Per SFIP Art. VII(J)(4), the Rudis had sixty days from the date of loss to submit a sworn and executed Proof of Loss to State Farm for any damages in dispute. (Mot. ¶ 16; Resp. ¶ 16).[2]

---

[1] The Third Circuit has provided this description of flood insurance under the NFIP:

> The National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4129, established the NFIP. The NFIP is underwritten by the United States Treasury in order to provide flood insurance below actuarial rates. 42 U.S.C. § 4017 (2003); see also Van Holt v. Liberty Mutual, 163 F.3d 161, 164 n. 2 (3d Cir.1998). The NFIP is administered by FEMA and the Federal Insurance Mitigation Administration ("FIMA"). 42 U.S.C. § 4011 (2003); 44 C.F.R. §§ 59.1-77.2 (2003).
>
> The SFIP is codified at 44 C.F.R. Pt. 61, App. A (2003) and is incorporated into the Code of Federal Regulations by reference at 44 C.F.R. § 61.13(a) (2003). The SFIP and all disputes arising from the handling of any claim under the policy are governed by the flood insurance regulations promulgated by FEMA, the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4129, and federal common law. 44 C.F.R. Pt. 61, App. A(1), Art. 11 (2000) / Art. IX (2003). FEMA provides for marketing and claims adjustment of the SFIP by Write Your Own ("WYO") Companies, who operate as fiscal agents of the United States. 44 C.F.R. §§ 61.13(f), 62.23 (2003); 42 U.S.C. § 4071(a)(1) (2003) (authorizing FEMA director to utilize insurance companies as fiscal agents of the United States).
>
> The WYO Companies are bound to adjust claims in accordance with the terms of the SFIP. The SFIP requires that in adjusting claims, the WYO Company apply its own company standards guided by NFIP Claims manuals issued by FEMA. 44 C.F.R. § 62.23(i)(1) (2003). WYO carriers may not alter, amend, or waive any provision or condition of the SFIP absent express written consent from the Federal Insurance Administrator. 44 C.F.R. Pt. 61, App. (A)(1), Art. 9(D) (2000) / Art. VII(D) (2003); 44 C.F.R. § 61.13(d) (2003).
>
> The SFIP requires that an insured claiming damages for flood loss provide the WYO carrier with proof of loss within 60 days from the date of the alleged loss. 44 C.F.R. Pt. 61 App. A(1), Art. 9(J) (2000) / VII(J) (2003).

*See Suopys v. Omaha Property & Cas.*, 404 F.3d 805, 807 (3d Cir. 2005).

[2] Although neither party has placed the SFIP into the record, the SFIP is posted on the Federal Emergency Management Agency ("FEMA") website. *See* Standard Flood Insurance Policy, *available at* http://www.fema.gov/media-library-data/20130726-1730-25045-6388/f122dwellingform0809.pdf. State Farm's citations to the SFIP track the language of the SFIP as posted at the FEMA website, and the Rudis do not challenge or dispute any of State Farm's characterizations of the Policy or the SFIP. Additionally, the section of the renewal certificate for the Policy entitled "Forms and Endorsements" indicates that plaintiffs had coverage under Flood Dwelling Form FP-7920.4, which a .pdf document hosted on a third party website shows to be the same SFIP posted on the FEMA website, but with different cover page and corner labeling. *See* http://www.delmarlearning.com/companions/content/1428318496/forms/Flood%20Policy/Flood%20Policy.pdf.

After the flood, the Rudis retained licensed public adjuster David Schlegal to help them present a damages claim to State Farm. (Resp. Ex. 1). On October 17, 2010, Schlegal prepared a preliminary estimate that stated a contents estimate of $25,542.64 and a building estimate of $44,791.82. (Resp. Ex. A). The Rudis did not sign the estimate. (Resp. Ex. A). On October 19, 2010, the Rudis signed a proof of loss for an advance payment stating the following items and amounts: "The Actual Cash Value of said property at the time of the loss—TBD; The Whole Loss and Damage—Advance Payment $10,000; Less Amount of Deductible—$2,000; The Amount Claimed under the above numbered policy—$8,000." (Resp. Ex. A; Mot. Ex. H). The proof of loss did not refer to or incorporate Schlegal's preliminary estimate. On October 20, 2010, Schlegal faxed a letter to State Farm representative Patrick Taylor that included the October 17 estimate and the October 19 Proof of Loss. (Resp. Ex. A). The letter thanked Taylor for meeting with the Rudis to inspect the Property, and directed Taylor to the attached "preliminary building and contents estimates" and "Proof of Loss, representing the insured's request for an advance partial payment on their already incurred claim expenses." (Resp. Ex. A). On November 10, 2010, State Farm issued an $8,000 check to the Rudis. (Mot. ¶ 7; Resp. ¶ 7).

On November 30, 2010, the Rudis submitted a second sworn proof of loss stating the total claim amount as $14,837.10, after reducing the building claim by $2,000 for the deductible and the contents claim for a similar $2,000 deductible. (Mot. ¶ 8; Resp. ¶ 8). On December 9, 2010, State Farm issued a check to the Rudis for $6,837.10 —the difference between the amount claimed on November 30 and the $8,000 paid to the Rudis on November 10. (Mot. ¶ 9; Resp. ¶ 9). The Rudis submitted a third sworn Proof of Loss on January 3, 2011, here stating the claim

amount as $20,673.45, again net of the deductibles.[3] (Mot ¶ 10; Resp. ¶ 10; Mot. Ex. D). On January 7, 2011, State Farm issued a check to the Rudis for $5,836.35—the difference between the amount claimed on January 3 and the $14,837.10 previously paid to the Rudis. (Mot ¶ 11; Resp. ¶ 11). The checks on the record show $20,673.45 in total payments from State Farm to the Rudis (Mot. Ex. A, C, E) an amount both Margaret and Francis Rudi recalled as accurate in their depositions (Mot. Ex. F, H).

On July 7, 2011, the Rudis brought this action claiming breach of contract by State Farm for refusing to provide full coverage under the Policy for its losses, stated in the complaint to be $8,483.56 in cost to repair the premises, $5,000 in cost to replace personal property, and $7,380.72 in recoverable depreciation—a total sum of $20,864.28. They also brought a claim for bad faith conduct under 42 Pa. C.S.A. § 8371.

On October 1, 2013,[4] State Farm moved for summary judgment on both claims.

## II.   Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that could affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to

---

[3] The Motion for Summary Judgment ¶ 10, 11 states, and the Rudis' response admits, that Plaintiffs' January 3, 2011 proof of loss claimed $20,673.48. However, the January 3, 2011 proof of loss is attached as exhibit D to the motion, and it shows the amount claimed—in clear handwriting—to be $20,673.45. Moreover, the $20,673.45 number is what State Farm's counsel used in depositions of both Francis and Margaret Rudi, and the total amount would have to be $20.673.45 for the January 7, 2011 payment of $5,836.35 to represent the difference between total amount claimed and amounts paid to that point. As it is a difference of three cents, I treat the amount stated in ¶ 10, 11 of the motion as a scrivener's error, and proceed as if the intent of the parties in ¶ 10, 11 of the motion and the response was to state that the Rudis claimed $20,673.45 on January 7, 2011.

[4] On January 11, 2012, I ordered the action placed in civil suspense at the request of the parties pending settlement negotiations. On April 2, 2013, I ordered the action transferred from civil suspense to the current docket.

return a verdict for the nonmoving party." *Roth v. Norfalco LLC*, 651 F.3d 367, 373 (3d Cir. 2011) (internal quotation marks omitted).

"In evaluating the motion, 'the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Guidotti v. Legal Helpers Debt Resolution, LLC,* 716 F.3d 764, 772 (3d Cir.2013) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal quotation omitted).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted); *El v. Se. Pennsylvania Transp. Auth. (SEPTA)*, 479 F.3d 232, 237 (3d Cir. 2007). "If a non-moving party fails to [then] make a showing sufficient to establish the existence of an element essential to that party's case on which it bears the burden of proof at trial, there is no issue as to a genuine issue of a material fact and thus the moving party is entitled to judgment as a matter of law." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 266 (3d Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

**III.    Discussion**

    **A.    Breach of Contract**

State Farm contends that it is entitled to summary judgment on the Rudis' breach of contract claim in Count I because it has paid all amounts claimed by the Rudis' in sworn proofs of loss, and, under the SFIP and the NFIP, it cannot be liable for amounts not claimed in timely, sworn proofs of loss. The Rudis respond that Respondents' Exhibit A—consisting of Schlegal's October 20, 2010 letter to State Farm and an affidavit from Schlegal attesting to its validity— "provides ample facts upon which a fact finder can conclude that the Plaintiffs complied with their obligations to submit a compliant Proof of Loss setting forth the amount of their claim." *See* Resp. at *8.

As stated above, the Rudis' breach of contract claim is governed by the SFIP, of which Art. VII(J)(4) requires that "in case of a flood loss to insured property, you must . . . within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you . . . ." *See Suopys*, 404 F.3d at 807.  The SFIP then provides that the insurance adjuster may furnish you with a proof of loss form and may help you complete it but it is a matter of courtesy only and "you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it (emphasis added)." The Third Circuit has therefore concluded that "[s]trictly construed, the SFIP clearly and unambiguously requires that proof of loss be submitted by the insured within 60 days of the claimed flood loss.  The SFIP places the onus on the insured to file the proof of loss within 60 days regardless of the representations and assistance, or lack thereof, provided by the insurer or its adjuster." *Suopys*, 404 F.3d at 810.

In *Suopys* the Third Circuit held that because any claims paid by a WYO company are a direct charge to the United States Treasury, "strict adherence to SFIP proof of loss provisions, including the 60-day period for providing proof of loss, is a prerequisite to recovery under the SFIP." *Id.* at 810. Where an insured plaintiff has failed to strictly comply with SFIP provisions regarding proof of loss, summary judgment is appropriate in favor of a defendant-insurance company. *See id.* at 811-12. The SFIP proof of loss provisions will not be waived by the submission of an adjuster's report of the loss unless the adjuster's report is signed and there is a written waiver from the Federal Emergency Management Agency ("FEMA"). *Id.* General doctrines of waiver and estoppel do not apply.

Here, the record shows three proofs of loss signed and sworn by Margaret and/or Francis Rudi: the proof of loss of October 19, 2010 seeking a $8,000 advance payment; the proof of loss of November 30, 2010 stating a $14,837.10 claim; and the proof of loss of January 3, 2011 stating a $20,673.45 claim. Meanwhile, the record shows a check from State Farm to the Rudis subsequent to each of the three proofs of loss, adding in the aggregate to $20,673.45 in payments. The Rudis did not dispute this amount in their depositions, nor do they dispute it here in their brief. Irrespective of the estimate prepared by Schlegal, the Rudis claimed $20,673.45 in sworn proofs of loss and were paid the entirety of that amount by State Farm.[5] As the record shows no FEMA waiver and the Rudis did not sign the estimate prepared by Schlegal, it cannot be said that the proof of loss requirement is waived by Schlegal's October 20 letter to the State Farm representative. *See id.* at 810. Moreover, none of the proofs of loss referred to or attempted to incorporate by reference the Schlegal estimate.

---

[5] At no point in their briefs or the record do the Rudis contend that the November 30, 2010 and January 3, 2011 proofs of loss were intended to claim amounts beyond those which had already been paid, rather than reflect their claim in aggregate. Nor is there anything else in their briefs or the record to suggest that would be the case.

There is no genuine issue that State Farm paid all that was validly claimed of it.[6] Summary judgment in favor of State Farm is therefore appropriate on the breach of contract claim.[7] *See id*. at 811-12; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

### B.     Statutory Bad Faith

State Farm contends that the Rudis' statutory bad faith claim is foreclosed because federal law preempts state law extra-contractual claims related to NFIP policies such as the State Farm policy at issue in this case. *See C.E.R. 1988, Inc. v. The Aetna Casualty & Surety Co.*, 386 F.3d 263, 270 (3d Cir. 2004). The Rudis do not oppose summary judgment on their statutory bad faith claim.

An appropriate order follows.

---

[6] If anything, the Rudis received more—not less—than the amount validly claimed, as the January 3, 2011 proof of loss was submitted well past the SFIP's 60-day deadline for submitting proofs of loss.

[7] It is sufficient to resolve this dispute that State Farm paid all amounts (or more) validly claimed of it. However, I note that the Rudis' claim for relief is based on the allegation that State Farm refused to make payment for losses adding to $20,864.28, where the record shows State Farm made $20.673.45 in relevant payments to the Rudis. Notwithstanding the SFIP proof of loss requirements, it is difficult to understand the Rudis' basis for seeking relief.